*Formatted for Electronic Distribution*                              *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
September 29, 2010

In re:

**Timothy S. Weatherell**                          Chapter 13 Case
**and Tara J. Weatherell,**                        # 10-10123
                **Debtors.**

*Appearances:*     Michelle Kainen, Esq.                    David Edwards, Esq.
                         Kainen Law Office, PC                   Lobe & Fortin PLC
                         White River Junction, VT               South Burlington, VT
                         *For the Debtors*                          *For the Creditor*

## MEMORANDUM OF DECISION
### SUSTAINING DEBTORS' OBJECTION TO MODIFIED INTEREST COMPONENT OF CLAIM

About 18 months prior to filing this bankruptcy case, Timothy and Tara Weatherell (the "Debtors") entered into an agreement with the loan servicer handling their mortgage loan (the "Modification Agreement") which, among other things, reduced the rate of interest and the monthly loan payment on their mortgage note for a specified time period. Mr. and Mrs. Weatherell subsequently found themselves unable to make even the reduced loan payments, defaulted on the Modification Agreement, and filed this chapter 13 case. Wells Fargo Bank, N.A. as Trustee for ABFC 2006-OPT3 Trust, ABFC Asset-Backed Certificates, Series 2006 OPT3 (the "Creditor") now seeks to collect from the Debtors the interest that had been held in abeyance pending successful completion of the Debtors' loan modification (the "Modified Interest") as part of its pre-petition arrearage claim in this case. For the reasons set forth below, the Court sustains the Debtors' objection to the Modified Interest portion of the Creditor's claim (totaling $1,147.98) and reduces the Creditor's allowed secured claim by that amount.

### JURISDICTION

This Court has jurisdiction over this contested matter under 28 U.S.C. § 1334 and 157(b)(B).

### BACKGROUND FACTS AND PROCEDURAL HISTORY

The material facts are not in dispute; the parties have stipulated to the following facts:

1. On or about July 1, 2006, the Debtors executed a note and mortgage in favor of The New York Mortgage Co., LLC A New York Corporation.

2. At some later point, the Debtors defaulted on their mortgage.

3. The Debtors and Creditor entered into a loan modification which, *inter alia*, contained a reduction in the contract rate of interest.

4. The Debtors defaulted on the terms of the loan modification.

5. The Debtors filed a bankruptcy case in this court on February 2, 2010.

6. The Debtors' Chapter 13 plan calls for a cure of the default of the loan modification agreement.

7. The Creditor filed a proof of claim in this case (Claim #5).

8. As part of its arrearage claim, the Creditor included the interest which had been held in abeyance pending successful completion of the Debtors' loan modification. This is noted on the proof of claim as "Modified Interest" in the amount of $1,147.98.

9. The Debtors objected to the Creditor's proof of claim. At this time, the only issue which remains unresolved is whether or not the Modified Interest shown on the Creditor's proof of claim is properly allowed as part of the Creditor's mortgage arrearage claim.

Joint Stipulation of Facts (doc. # 27). The parties have each filed a memorandum of law.

## DISCUSSION

A completed proof of claim is generally entitled to a presumption of prima facie validity. In re Erasmo Martinez, 409 B.R. 35, 38 (Bankr. S.D.N.Y. 2009)(citing Fed. R. Bankr.P 3001(f)). A debtor or other party in interest who objects to a proof of claim "bears the initial burden of persuasion" to rebut that presumption by producing "'evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" In re Oneida, Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009)(citing In re Allegheny Int'l., Inc., 954 F.2d 167, 173-174 (3d Cir. 1992) (alteration in original). If the objecting party succeeds in rebutting the presumption, "the burden is shifted back to the claimant, [and the claimant] must then prove by a preponderance of the evidence that under applicable law the claim should be allowed." In re Oneida, Ltd., 400 B.R. at 389. Here, the Debtors have rebutted the prima facie validity of the Creditor's proof of claim by presenting arguments that call into question the validity of the Modified Interest portion of the claim, and the Creditor has had the opportunity to respond to the Debtors' objection.

The crux of the Debtors' objection to claim (doc. # 29) is that the Debtors' plan seeks to cure the default of the Modification Agreement, this type of cure is permitted under the Bankruptcy Code, and if the Modification Agreement is reinstated then the Creditor is not entitled to collect the Modified Interest as part of its pre-petition arrearage claim.

The Creditor responds that the Modification Agreement should be enforced like any other contract, that it deferred interest on the condition that the Debtors perform their obligations, that the Modification Agreement required the Debtors to repay the Modified Interest in the event of a default, that the Debtors

did default pre-petition, and therefore the Modified Interest is properly allowed as part of the Creditor's pre-petition arrearage claim under basic contract law (doc. # 30).

In their memoranda of law, neither party cited any case law that addressed rights under a modification agreement in chapter 13. It appears this issue is one of first impression in this district, but the Court finds germane and persuasive authority from other districts. As a starting point, the Court looks to the applicable provisions of the Bankruptcy Code. The pertinent statute, § 1322, which addresses the contents of a chapter 13 plan, provides in relevant part:

> (b) Subject to subsections (a) and (c) of this section, the plan may –
>
> . . .
>
> (3) provide for the curing or waiving of any default;
>
> . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
>
> . . .
>
> (e) notwithstanding paragraph subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(b)(3), (5) & § 1322(e) (2010).

The Court also gives significant weight to the following term in the Modification Agreement, upon which the Creditor relies:

> (c) If [the Debtors] fail to make any of the payments specified in paragraph 2 [of the Modification Agreement] on the due dates and in the amount stated, or otherwise fails to comply with each and all of the terms and conditions herein, Loan Servicer [Creditor], at its sole option, may terminate this Agreement without further notice to [the Debtors]. In such case, all amounts that are owing under the Note and [mortgage], as amended by this Agreement, shall become immediately due and payable, and [the Creditor] shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents[1], including, but not limited to, immediate commencement of a foreclosure action without further notice to [the Debtors], and/or resumption of a pending foreclosure action without further notice to t[the Debtors], and/or conducting a pending foreclosure sale without further notice to [the Debtors].

Doc. # 30-1, paragraph 5(c).

---

[1] While "Loan" is defined to consist of "the Note, Security Instrument and this Agreement" (doc. # 30-1), the term "Loan Documents" is not defined anywhere in the Modification Agreement.

3

### A. The Code Requires the Terms of the Agreement Shall Control

If the Debtors propose to cure the Modification Agreement default through their Chapter 13 plan, the Creditor argues that the terms of the agreement determine the circumstances under which the cure may occur. The Creditor is correct; this is unequivocally required by the Bankruptcy Code:

> (e) Notwithstanding subsection (b)(2) of this section and sections 506 (b) and 1325 (a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, <u>shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.</u>

11 U.S.C. § 1322(e) (2010) (emphasis added).

However, the terms of the Modification Agreement are not inconsistent with the Debtors' right to cure. The Modification Agreement provided for certain remedies, including collecting the Modified Interest. However, such recovery is conditioned upon the Creditor's termination of the Modification Agreement. (doc. # 30-1, ¶ 5(c)). The record contains no mention that the Creditor had exercised its option to terminate the Modification Agreement as of the order for relief in this case. Instead, the Creditor relies upon the Debtors' default as grounds for the recovery of the Modified Interest. (docs. ## 22 ¶4, 30). Moreover, as further evidence the Creditor did not terminate the Modification Agreement, the baseline for the "total debt" line item on the proof of claim appears to be based upon the "new principal balance" as defined and set forth in an exhibit to the Modification Agreement. (doc. # 30-1, ¶1).

### A. The Code Permits the Debtors to Cure and Restore the Parties to the <u>Status</u> <u>Quo</u> <u>Ante</u>

The law in this circuit with respect to a debtor's right to cure a pre-petition default is well settled:

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "de-accelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences-here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code.

<u>Pierro v. Taddeo (In re Taddeo)</u>, 685 F.2d 24, 26-27 (2d Cir. 1982). The parties did not cite any case law on the particular legal issue presented in this contested matter. While there are surprisingly few cases that specifically address the curing of a pre-petition default in a mortgage modification agreement, the Court did find some. It finds persuasive, and adopts the reasoning of, the decision of its sister bankruptcy court in the third circuit, which analyzed similar facts. In <u>In re Lammy</u>, 356 B.R. 168, 169 (Bankr. E.D. Pa. 2006), the issue before the court was the amount necessary to cure the debtors' default; specifically it addressed "whether a § 1322(b)(5) cure requires payment of an arrearage under an original loan agreement

4

or the loan agreement as modified pre-bankruptcy." In concluding that the amount due consisted of the "unpaid principal, interest and costs under the loan modification," the Lammy court held "as a matter of bankruptcy law . . . a debtor may cure the arrearage under a loan modification without curing the arrearage under the original note and still invoke the protection of § 1322(b)(5) so long as the loan modification agreement does not foreclose such cure." 356 B.R. at 169, 174 n. 12.

In Lammy, the debtors had missed forty-six payments due under the original note and mortgage, the parties entered into a modification which extended the maturity date by forty-six months and re-amortized the current principal balance due (the original loan arrearage) over the remaining, extended term. Id. at 170. The mortgage creditor reserved its remedies (acceleration and foreclosure) under the original loan, but agreed not to exercise them, so long as the debtor made timely payments thereafter. Id. The debtors defaulted on the payments due under the modification and filed a Chapter 13 bankruptcy case, and the creditor filed a proof of claim seeking to collect both the arrearage due under the original note and the arrearage due under the modification. Id. at 170-71.

The court recognized the interplay of § 1322(b)(5) and § 1322(e), and determined that the controlling contract before the court was the original loan agreement, as modified by the loan modification. Id. at 172. It held that by entering into the modification agreement, the creditor had "agreed to this deferral of receipt of the [original loan arrearage] and a forbearance of the original default so long as current monthly payments were made." Id. at 175. The debtors did default under the modification, however, the "[d]ebtors' cure of the [modification arrearage] would return [d]ebtors to their pre-default status under the [l]oan as modified by the [l]oan [m]odification and would nullify the consequences of their [post-modification] default." Id. (emphasis in original). The court determined that the "essential inquiry is whether the proposed cure will remove the triggering event that caused the default." Id. at 176. The "triggering event" was the failure to pay under the modified agreement, and the "cure of it will return the parties to the status quo ante and permit the Debtors to have the benefit of the loan extension." Id.

Similarly, in In re Cook, 172 B.R. 292, 292-293 (Bankr. W.D. Mo. 1994), the court analyzed a situation where debtors defaulted on their original loans, then entered into a modification which reduced the total debt and provided that the original loans would "'remain in their present status,' meaning the debtors would be obligated for the entire amount due owed prior to the modification," in the event of any default under the modification. The debtors subsequently defaulted, and the creditor submitted a proof of claim for the entire amount due under the original loans. Id. at 293. The debtors proposed a plan to cure the default by making payments due under the modification agreement, plus interest, and to continue regular payments as provided in the modification. Id. The Cook court reviewed §1322(b)(5), and noted that "the

5

concept that cure means a return to the pre-default status quo is well-recognized." Id. (citations omitted). The debtors' failure to timely pay under the modification "triggered certain consequences, namely the reinstatement of the original note." Id. However, "[s]uch default is one which is subject to cure." Id.

Here, the Debtors defaulted on their original loan and entered into the Modification Agreement (doc. # 27, ¶3). When the Debtors failed to make timely payments under the Modification Agreement that was the "triggering event that caused the default" and gave rise to Creditors claim for the Modified Interest. In their plan, the Debtors propose to cure the default of the Modification Agreement. They have the right to cure in a way that will "nullify the consequences" of their post-modification default and this approach will do precisely just that by returning the parties "to the status quo ante" pursuant to § 1322(b)(3) & (5). This is consistent with the contract between the parties, as well as with the Bankruptcy Code, and importantly, nothing in the Modification Agreement, including paragraph 5(c), supra, expressly precludes that.

## CONCLUSION

For the reasons set forth above, the Court concludes that (i) the Debtors have raised sufficient question as to the validity of the Modified Interest component of the Creditor's proof of claim to rebut the presumption of prima facie validity as to that portion of the claim, (ii) under § 1322 of the Bankruptcy Code and the applicable case law the Debtors are entitled to cure in such a way that will restore the parties to status quo ante, (iii) the salient provisions of the Modification Agreement do not expressly prohibit reinstatement under the terms set forth in the Debtors' Chapter 13 plan, and (iv) the cure and reinstatement of the Modification Agreement that the Debtors propose in their Chapter 13 plan is proper. Therefore, the Debtors' objection to the Modified Interest portion of the Creditor's proof of claim is sustained.

September 29, 2010  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge